UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X   Case No.: 21-cv-2528
FABIOLA ST. FLEUR,

                    **Plaintiff,**

    -against-                                           **COMPLAINT**

MEDFORD MULTICARE MANAGEMENT      **PLAINTIFF DEMANDS**
COMPANY, LLC, and LEROY (last name        **A TRIAL BY JURY**
unknown), *Individually*,

                    **Defendants.**
-------------------------------------------------------------------X

Plaintiff, FABIOLA ST. FLEUR, by her attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

### Nature of the Case

1. Plaintiff brings this action charging that Defendants violated the Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, and the New York State Human Rights Law ("NYSHRL"), New York State Executive Law § 296, *et seq.* and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against and sexually harassed on the basis of her sex/gender by Defendant LEROY (last name unknown) and unlawfully terminated in retaliation for complaining of sexual harassment.

### Jurisdiction and Venue

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) as this is a judicial district in the State in which the unlawful employment practices were committed.

3. This Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), based upon the fact that the claims alleged herein took place within the Eastern District of New York.

## Procedural Prerequisites

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue ("Notice") from the EEOC, dated March 30, 2021, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto as Exhibit A.

7. This Action is being commenced within ninety (90) days of receipt of said Notice.

## Parties

8. Plaintiff is a resident of Nassau County, State of New York.

9. At all relevant times herein, Defendant MEDFORD MULTICARE MANAGEMENT COMPANY, LLC, (hereinafter, "MEDFORD MULTICARE") was and is a domestic limited liability company existing pursuant to, and by virtue of, the laws of the State of New York, with its executive office located at 8 Fosse Court, Monsey, New York 10952.

10. At all times relevant, Plaintiff worked at Defendant MEDFORD MULTICARE'S facility that provides long-term nursing care and inpatient care to residents, located at 3115 Horseblock Road, Medford, New York 11763 (hereafter "Facility").

11. At all times material, Defendant LEROY (last name unknown) (hereafter "LEROY") is and was an employee of Defendant MEDFORD MULTICARE. Defendant LEROY is being sued herein in his individual and official capacities.

12. At all relevant times herein, Plaintiff was and is a "person" and an "employee" entitled to protection as defined by Title VII and the NYSHRL.

13. Defendant MEDFORD MULTICARE and Defendant LEROY are collectively referred to herein as "Defendants."

14. At all times relevant hereto, Plaintiff was an employee of Defendant MEDFORD MULTICARE.

**Material Facts**

15. On or about November 2014, Plaintiff began working for Defendant MEDFORD MULTICARE as a Certified Nursing Assistant, earning $18.50 per hour.

16. Plaintiff's job duties and responsibilities as a Certified Nursing Assistant consisted of performing basic care for patients, assisting the nursing staff with medical tasks, and reporting patient behavior and well-being.

17. Throughout Plaintiff's employment with Defendant MEDFORD MULTICARE, Plaintiff was an exemplary employee and was well-qualified for her position.

18. In or about late 2014 or early 2015, Defendant LEROY began working at Defendant MEDFORD MULTICARE as a Licensed Nurse Practitioner.

19. Shortly thereafter, Defendant LEROY began sexually harassing Plaintiff on a regular, continuous basis. This continued despite the fact Plaintiff repeatedly rejected Defendant LEROY's advances.

20. The sexual harassment consisted of Defendant LEROY following Plaintiff into rooms, where he, on multiple occasions, would press his body up against hers, grind his genital area against her genital area or against her buttocks, kiss her, comment about liking her "booty" (buttocks), and slap her buttocks.

21. On multiple occasions, Defendant LEROY ejaculated onto his uniform and then told Plaintiff, in sum and substance, "This is your fault because you do this to me."

22. On multiple occasions, Defendant LEROY exposed his penis to Plaintiff.

23. In or about the first half of 2018, Plaintiff reported Defendant LEROY'S sexual harassment to management, telling Patty (last name unknown) (hereafter "Patty"), who was the head of nursing, that she was being sexually harassed.

24. However, Patty did not respond to the report and took no action in rectifying the sexual harassment.

25. Soon after making the report of sexual harassment to Patty, Plaintiff was transferred to the dementia unit, which was a more stressful and challenging assignment than her previous work assignment.

26. Plaintiff interpreted this transfer as a punishment and retaliation for complaining of sexual harassment.

27. After Plaintiff was transferred to the dementia unit, Defendant LEROY no longer had occasion to be alone in a room with Plaintiff, but would make sexually harassing remarks to her in the hallway or other common areas in passing, including but not limited to offering to pay her if she would "do something for [him]." It was clear to Plaintiff that, in saying this, Defendant LEROY was referring to sexual favors.

28. In or about June 2020, Plaintiff again reported to management that she was being sexually harassed. Specifically, she made the report to Molly (last name unknown) (hereafter "Molly"), who had succeeded Patty as head of nursing.

29. Molly asked Plaintiff what Plaintiff wanted her to do about the sexual harassment. When Plaintiff expressed concerns about retaliation, Molly simply dropped the matter and did nothing to address the sexual harassment.

30. On or about June 11, 2020, Defendant MEDFORD MULTICARE terminated Plaintiff's employment.

31. The reason offered by Defendant MEDFORD MULTICARE for the termination was that Plaintiff had violated a workplace policy by uttering a curse word at work. Plaintiff does not recall using any curse words at work.

32. Defendant MEDFORD MULTICARE'S stated reasons for Plaintiff's termination were clearly pretextual. Plaintiff's employment termination was in retaliation for engaging in protected activity when she complained of sexual harassment.

33. Defendant MEDFORD MULTICARE sought to fabricate a pretextual reason to terminate Plaintiff, the true reason being that Plaintiff complained of sexual harassment.

34. But for Plaintiff's sex/gender and Plaintiff's complaints of sexual harassment, Defendants would not have terminated Plaintiff's employment.

35. Defendant MEDFORD MULTICARE had no good faith business justification for terminating Plaintiff's employment.

36. Upon information and belief, Defendant MEDFORD MULTICARE'S failed to take corrective action regarding the gender discrimination and sexual harassment in the workplace to which Plaintiff was subjected.

37. The above are just some of the acts of sexual harassment that Plaintiff experienced on a regular basis while employed by Defendants.

38. Notably, the problem of sexual harassment at Defendant MEDFORD MULTICARE is not

limited to Plaintiff's experience. Plaintiff is aware of other employees who reported sexual harassment at Defendant MEDFORD MULTICARE. Upon information and belief, the accused harassers were not terminated.

39. As a result of Defendants' actions, Plaintiff feels extremely humiliated, offended, disgusted, degraded, victimized, embarrassed, and emotionally distressed by this unlawful sexual harassment.

40. Defendants' actions and conduct were more likely than not caused by a discriminatory and retaliatory intent and intended to harm Plaintiff.

41. As a direct result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, salary, bonuses, benefits and other compensation.

42. As a direct result of the acts and conduct complained of herein, Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional distress.

43. Defendants acted maliciously, willfully, outrageously, and with full knowledge of the law.

44. As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

45. Further, Plaintiff is entitled to liquidated damages in an amount to be determined at trial, because the Defendants willfully violated Title VII and the NYSHRL by discriminating and retaliating against Plaintiff.

**First Cause of Action for Discrimination**
**Under Title VII of the Civil Rights Act of 1964**
**(Not Against Individual Defendant)**

46. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

47. Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–2(a)(1), states in pertinent part, that:

> It shall be an unlawful employment practice for an employer… to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, or national origin[.]

48. Defendant MEDFORD MULTICARE engaged in unlawful employment practices prohibited under 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiff on the basis of her sex.

49. Defendant MEDFORD MULTICARE violated the section cited as set forth above.

50. Plaintiff is entitled to the maximum amount allowed under this statute.

### Second Cause of Action for Retaliation
### Under Title VII of the Civil Rights Act of 1964
### (Not Against Individual Defendant)

51. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

52. Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

53. Defendant MEDFORD MULTICARE engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to unlawful employment practices.

7

54. Plaintiff is entitled to the maximum amount allowed under this statute.

### Third Cause of Action for Discrimination
### Under the New York State Executive Law
### (Against all Defendants)

55. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

56. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

57. Defendants engaged in an unlawful discriminatory practice in violation of the New York State Executive Law § 296(1)(a) by discriminating against Plaintiff based on his sex (sexual harassment).

### Fourth Cause of Action for Aiding and Abetting
### Under the New York State Executive Law
### (Against Defendant LEROY)

58. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

59. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

60. Defendant LEROY engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## Fifth Cause of Action for Retaliation
## Under the New York State Executive Law
## (Against All Defendants)

61. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

62. New York State Executive Law § 296(1)(e) provides that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

63. Defendants violated the section cited herein as set forth.

64. Plaintiff is entitled to the maximum amount allowed under this statute.

## Jury Demand

65. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*, and the New York State Human Rights Law, New York State Executive Law § 296, *et seq.*, in that Defendants discriminated against Plaintiff based on Plaintiff's sex/gender (sexual harassment);

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful harassment, discrimination, retaliation, and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D. Awarding Plaintiff damages for loss of income, the loss of a salary, bonus, benefits, and other compensation, which such employment entails;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff liquidated damages;

G. Awarding Plaintiff prejudgment interest;

H. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

I. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
May 6, 2021

                                       **PHILLIPS & ASSOCIATES,**
                                       ATTORNEYS AT LAW, PLLC

By:          /s/                   
Joshua M. Friedman
Steven R. Filosa
*Attorneys for Plaintiff*
585 Stewart Avenue, Suite 410
Garden City, New York 11530
(212) 248-7431
jfriedman@tpglaws.com
sfilosa@tpglaws.com

10